IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THEODUS LINDSAY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV596 |
| | ) | |
| WILLIAM GLICK, III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Theodus Lindsay, Jr.'s Motion for Partial Summary Judgment (ECF No. 89), Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 98), and Defendants Donna Barringer, Monica Bond, Jeffrey Brafford,[1] Dr. William Brandhorst, Wendy Brewton,[2] Macre Crider, William Glick, III, Hargrave, Tony Hildreth, Huneycutt, Victor Locklear, John Lookabill, Cordelia McBride, Parsons, Ebony Ratliff, and Jeanette Robinson's (collectively referred herein as "Defendants"), Motion for Summary Judgment (ECF No. 117). All matters are ripe for disposition. For the following reasons, the Court will grant Defendants' Motion for Summary Judgment, deny Plaintiff's Motion for Partial Summary Judgment, and deny Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

## I. PROCEDURAL BACKGROUND

On July 22, 2015, Plaintiff, a pro se prisoner, filed a Complaint asserting that

---

[1] Defendant Brafford is incorrectly referred to in the Complaint as "Bradford."

[2] Defendant Brewton is incorrectly referred to in the Complaint as "Bruton."

Defendants were deliberately indifferent to Plaintiff's medical needs and safety by denying him access to mental health treatment and protective custody. (*See generally* Compl., ECF No. 2.) Plaintiff also asserts that Defendants denied him due process during his disciplinary hearing. (*Id.* at 12.) On November 20, 2015, Defendants filed an answer. (Answer, ECF No. 24.) Plaintiff thereafter filed a motion to amend the Complaint which the court granted. (ECF No. 29.) Discovery commenced in this matter. (*Id.*) Plaintiff subsequently filed several additional motions, including motions to amend his Complaint and discovery motions. (*See* ECF Nos. 32, 33, 45, 46, 48, 75, 78.) Plaintiff also filed several dispositive motions, which the Court recommended be denied without prejudice to filing said motions at the close of discovery. (*See* ECF No. 76.) Plaintiff later refiled his partial summary judgment motion now pending before the Court. (ECF No. 89.) Thereafter, Plaintiff filed a motion for a temporary restraining order and preliminary injunction. (ECF No. 98.) On October 25, 2016, the Court ruled upon several of Plaintiff's motions, and allowed Plaintiff the opportunity to supplement his brief on the pending partial summary judgment motion. (*See* ECF No. 104.) Plaintiff then filed a supplement and an affidavit in support of his motion. (ECF Nos. 110, 111.) On January 9, 2017, Defendants filed their motion for summary judgment. (ECF No. 117.) Plaintiff filed an opposition brief (and supplement) to Defendants' motion. (*See* ECF Nos. 122-24.)

## II. FACTUAL BACKGROUND

In his Complaint, Plaintiff asserts that Defendants were deliberately indifferent to Plaintiff's medical needs and safety by denying Plaintiff access to mental health treatment and

protective custody.  (*See generally* Compl., ECF No. 2.)[3]  Plaintiff arrived at Albemarle Correctional Institution ("Albemarle") in June 2014.  (*Id.* at 5.)  In August 2014, Plaintiff alleges that he requested to participate in a mental health psychological rehabilitative treatment program for his Post Traumatic Stress Disorder ("PTSD") resulting from his experience in the military.  (*Id.*)  Plaintiff further alleges that he was denied access to the program and was assigned to the "road squad" for a work assignment.  (*Id.*)  Plaintiff states that on several occasions, he requested to be removed from road squad duty and to be admitted to the mental health psychological rehabilitative treatment program.  (*Id.* at 5-7.)  On October 21, 2014, Plaintiff states that he was assaulted on the road squad bus.  (*Id.* at 5.)  Plaintiff alleges that Defendant Brafford failed to do anything about the altercation.  (*Id.*)  Plaintiff asserts that he continually complained to several Defendants about being assaulted on the road squad bus.  (*Id.* at 6-8.)  Subsequently, Plaintiff was assaulted again on road squad duty on November 13, 2014.  (*Id.* at 9.)  As a result of this second altercation, Plaintiff was moved to restrictive housing.  (*Id.*)

In his first amended complaint, Plaintiff asserts claims against two additional defendants, Bond, Chief Disciplinary Officer, and Locklear, a Disciplinary Hearing Officer.  (Am. Compl., ECF No. 30.)  Plaintiff asserts that both violated his due process rights during his disciplinary hearing.  (*Id.*)  Subsequently, Plaintiff filed a supplement and an amended complaint alleging that Defendants violated the Americans with Disabilities Act.  (Suppl., ECF

---

[3]  Plaintiff's Amended Complaint (ECF No. 30) asserts additional claims against Defendant Locklear and Bond.  Thus, in setting forth the allegations before the Court, this memorandum will reference Plaintiff's original complaint, amended complaint, and supplements.  (ECF Nos. 2, 30, 32.)

3

No. 32.) Plaintiff also alleges that Mr. Spruill, a unit manager, "provided assistance on January 21, 2015 at [Plaintiffs disciplinary rehearing]." (*Id.* at 5) Plaintiff contends that Mr. Spruill told Plaintiff that his disciplinary hearing was "jacked-up." (*Id.* at 5-6.)

Defendants' summary judgment material include a supporting brief and several affidavits with attached exhibits. Defendants' material first show that Plaintiff has been incarcerated in several correctional institutions, and he is currently located at Maury Correctional Institution ("Maury"). (Inmate Transfer Sheet, ECF No. 118-2.) Immediately prior to his transfer to Maury, Plaintiff was incarcerated at Bertie. (*Id.*) During each transfer to another prison, a health screening form was completed for Plaintiff. (Health Screening Form, Barringer Aff. Ex. 1, ECF No. 118-4.) During each screening, Plaintiff was asked questions such as "do you have any allergies" and "do you have a current mental health complaint?" (*Id.*) With the exception of having seasonal/grass allergies, Plaintiff repeatedly answered "no." (*Id.*) While at Albemarle, Plaintiff was assigned to case manager Defendant Ebony Ratliff, who was responsible for providing correctional counseling, completing inmate assessments, formulating case plans, and facilitating inmate access to programs and services. (Ebony Ratliff Aff. ¶ 5, ECF No. 118-21.) According to Ratliff, Plaintiff requested several classes, some of which were unavailable at Albemarle, and Plaintiff declined to attend others. (*Id.* ¶ 7.) Ratliff asserts that Plaintiff made no complaints regarding his mental health during the time he was assigned on her caseload. (*Id.* ¶ 6.)

Defendant McBride was the Correctional Program Supervisor whom assigned Plaintiff to labor service, road squad duty. (Cordelia McBride Aff. ¶¶ 2, 5, ECF No. 118-18.) According to McBride, Plaintiff had no restrictions indicated in his file that his assignment to

4

labor service was improper. (*Id.* ¶ 5.) Plaintiff's acuity level and his activity grade level confirmed that no restrictions were necessary. (*Id.*) Plaintiff began complaining that he was a disabled veteran with previously diagnosed PTSD and that he should not be on road squad, however his requests to be removed from road squad were repeatedly denied because nothing in Plaintiff's medical or prison file indicated that he was not suitable to work the assignment. (*See Id.* ¶ 7; Inmate Request, McBride Aff. Ex. 1, ECF No. 118-19; Inmate Request, ECF No. 2 at 21.) After the request was denied, Plaintiff wrote a letter to McBride asking to be left on road squad duty until the medical issues were resolved. (Pl. Letter to McBride, ECF No. 118-20.) Defendant Glick thereafter informed Plaintiff that there were no restrictions in Plaintiff's file that prohibited him from being on road squad duty. (Inmate Correspondence, William Glick Aff. Ex. 1, ECF No. 118-14.) Plaintiff was also informed that he needed to submit sick call requests for medical issues or concerns. (*Id.*)

Adhering to the letter, Plaintiff thereafter submitted several sick call requests indicating his desire to receive mental health treatment. (*See* Sick Call Requests, ECF No. 2 at 26-32.) One request was made through unit manager Defendant Hildreth, on October 28, 2014. (Tony Hildreth Aff. ¶ 5, ECF No. 118-15.) Hildreth asked Plaintiff if he needed to be removed from general population until he was evaluated by mental health officials and Plaintiff's response was that "he would be okay." (*Id.*) On October 31, 2014, Plaintiff was seen by Defendant Dr. Brandhorst, a staff psychologist, for a mental health evaluation. (William Brandhorst Aff. ¶ 6, ECF No. 118-8.) At that time, Plaintiff informed Dr. Brandhorst that Plaintiff had been diagnosed with PTSD and considered a 60% disabled veteran, which made him unable to work road squad duty. (*Id.* ¶ 8; Mental Health Referral, Brandhorst Aff.

5

Ex. 1, ECF No. 118-9.) Dr. Brandhorst asked Plaintiff to sign a release form to obtain his disability records and Plaintiff refused. (Brandhorst Aff. ¶ 8; Brandhorst Aff. Ex. 1, ECF No. 118-9 at 2.) As a result of Plaintiff's refusal, Dr. Brandhorst had no information to confirm that Plaintiff should be removed from road squad duty. (Brandhorst Aff. ¶ 9.) Plaintiff thus remained on road squad duty.

Shortly thereafter, Plaintiff was involved in an incident on the road squad bus on November 13, 2014. (Jeffrey Brafford Aff. ¶¶ 8-10, ECF No. 118-7.) According to Defendant Brafford, a correctional officer, he heard a disturbance on the road squad bus, opened the rear door, and witnessed Plaintiff assaulting another inmate. (*Id.* ¶ 8.) Brafford asserts that Plaintiff was standing over another inmate, striking the inmate in the head and neck with Plaintiff's fist. (*Id.*) Brafford told both Plaintiff and the inmate to cease fighting; however, Plaintiff ignored Brafford and continued to strike the other inmate. (*Id.*) Brafford subsequently sprayed Plaintiff with pepper spray, and both inmates were removed from the bus. (*Id.*) Brafford attests that he did not witness any act by the other inmate to cause Plaintiff to strike the victim. (*Id.* ¶ 9.) Plaintiff asserts that he was attacked first, and that he has been kicked several times on the bus, which he reported to Brafford. (Witness Statement, Monica Bond Aff. Ex. 1, ECF No. 118-6 at 21-22.) Brafford asserts that Plaintiff never previously complained to him about being assaulted on the bus. (Brafford Aff. ¶ 11.) Defendant Hildreth also indicated that Plaintiff never complained to him about prior assaults. (*See* Hildreth Aff. ¶ 6.)

A hearing was conducted on December 12, 2014 regarding the incident. (Macre Crider Aff. ¶ 6.) According to Defendant Crider, although Plaintiff claimed to be have been first assaulted during the incident and assaulted on many occasions, the records didn't reflect such.

6

(*Id.* ¶ 9.)  Based upon the evidence, Crider found Plaintiff guilty of assaulting the other inmate on November 13, 2014.  (*Id.*)  Crider indicates that she did not make any statements to Plaintiff about the care of his mental health, nor did she consider Plaintiff's mental health status during the hearing.  (*Id.* ¶¶ 8, 10.)  Plaintiff was thereafter transferred to Bertie after the initial disciplinary hearing.  (Crider Aff. ¶ 11.)  After the transfer, a reinvestigation of Plaintiff's disciplinary hearing was ordered to obtain a witness statement from an inmate named "Flex." (Bond Aff. ¶ 5.)  Prison officials were unable to locate an inmate named "Flex" during the investigation.  (*Id.*)  After reviewing the evidence, Bond subsequently determined that Plaintiff's finding of guilty related to the November 13, 2014 incident was supported by the evidence.  (*Id.*; *see also* Hearing Record, Bond Aff. Ex. 1, ECF No. 118-6 at 4-9.)  Plaintiff requested several inmate statements and the presence of inmates at the initial hearing, however the record reflects that they were denied on grounds of relevancy.  (*See* Hearing Record, Bond Aff. Ex. 1, ECF No. 118-6 at 9.)  As in the initial hearing, Plaintiff indicated his mental health issues, however, there was no documentation in the record to confirm his concerns regarding PTSD.  (Bond Aff. ¶ 6; Victor Locklear Aff. ¶ 6, ECF No. 118-16.)

Evidence submitted in favor of Defendants' summary judgment motion also indicates that Plaintiff, while housed at Bertie, signed a release authorization form so that prison officials could obtain Plaintiff's past medical records.  (Release Form, Ex. 1, ECF No. 118-1.)  This occurred on August 23, 2016.  (*Id.*)  After records were obtained, Plaintiff was transferred to Maury Correctional Institution ("Maury") to receive mental health treatment.  (Transfer, Ex. 2, ECF No. 118-2; *see also* Pl. Decl. ¶¶ 10-12, ECF No. 108.)

In support of his motion for summary judgment, Plaintiff has also filed several

declarations and affidavits. (*See* ECF Nos. 71, 91, 92, 108, 111.) Plaintiff reasserts his argument that prison officials were aware of Plaintiff's mental health conditions, thus he should not have been on road squad duty. (*See* e.g., Pl. Aff. ¶ 3, ECF No. 111.) Plaintiff also asserts that his subsequent transfer to Maury is the "proof" that he was improperly cared for by prison officials. (*Id.* ¶¶ 1-5.) Plaintiff further affirms to an improper disciplinary hearing whereby Defendants failed to allow Plaintiff's witnesses to testify, and their failure to explain their reasoning for finding him guilty of the assault against another inmate. (Pl. Aff. ¶¶ 34-35, ECF No. 91.) Plaintiff also relies upon several exhibits attached to his Complaint, including inmate request forms, sick call request forms, grievances, written letters and correspondence between Plaintiff and prison officials, and disciplinary hearing records. (Pl. Exs., ECF No. 2 at 16-40.)

## III. DISCUSSION

## <u>Cross Motions for Summary Judgment</u>

Both parties have moved for summary judgment in this matter.[4] (ECF Nos. 89, 117.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the

---

[4] Plaintiff's claims under the American with Disabilities Act have been deemed frivolous. (ECF No. 104 at 9-10.) Thus, the Court will not address this claim.

non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49. Here, Plaintiff is a pro se litigant, thus his pleadings are to be liberally construed. *Graham v. Geneva Enterprises, Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

## Plaintiff's Mental Health Treatment

A review of the evidence indicates that Defendants are entitled to summary judgment because there is no genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's medical needs. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure

9

that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "'deliberate indifference' to inmate health or safety." *Id.* at 834 (citation omitted). In *Farmer*, the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Id.* at 837.

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official action *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citations omitted) (emphasis in original). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citation omitted).

To constitute deliberate indifference to a serious medical need, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).[5] Thus, "mere negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). It is well settled, therefore, that a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35. As with any other Eighth Amendment claim, Plaintiff must demonstrate that the prison doctor acted with a sufficiently culpable state of mind and that the injury inflicted is sufficiently serious. *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

Here, the evidence is clear that Defendants (prison officials and prison doctors) were not deliberately indifferent to Plaintiff's medical needs. Although Plaintiff adamantly claimed that he was 60% disabled as a result of PTSD, the uncontested evidence demonstrates that Plaintiff's prison medical records lacked such information prior to August 2016. It was consistently noted on Plaintiff's medical screenings that he had no mental health issues. Additionally, at the time Plaintiff began complaining about his mental health issues, there were no health restrictions in his file. Thus, Defendants properly required Plaintiff to remain on

---

[5] *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, but it is still good law for the proposition cited.

road squad duty. After further complaints, Plaintiff was seen by Dr. Brandhorst, who instructed Plaintiff to sign a release authorization form which Plaintiff refused. Moreover, Plaintiff has offered no evidence that Defendants failed to act appropriately to Plaintiff's medical needs. Among other things, Plaintiff relies upon Defendants' answer whereby Defendant Brewton admitted that Plaintiff "showed [Brewton] some paperwork *claiming* that it was proof of PTSD." (Defs. An. ¶ 21, ECF No. 24 (emphasis added).) However, Brewton informed Plaintiff that nothing regarding PTSD had been documented in his medical records, and that he would remain on road squad duty absent restrictions that would prohibit him from doing so. At its core, Plaintiff appears to take issue with the policy and procedures of the North Carolina Department of Public Safety regarding how they handled Plaintiff's pre-incarceration medical needs. Plaintiff's general disagreement with Dr. Brandhorst over the procedures to verify the need for mental health treatment are not sufficient to raise an Eighth Amendment claim for the purposes of Plaintiff's claim. *Wright*, 766 F. 2d at 849. As stated by the Fourth Circuit Court of Appeals, "[t]he realities of running a penal institution are complex and unique to the prison environment." *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980). Thus, "[f]ederal courts have traditionally been reluctant to interfere in the problems of prison administration." *Id.* Indeed, the evidence demonstrates that it was Plaintiff himself that hindered the progress of prison officials; Plaintiff did receive mental health treatment upon the prison's verification of his mental health status. Having failed to show deliberate indifference on the part of Defendants as to Plaintiff's medical needs, summary judgment will be granted in favor of Defendants.

## Plaintiff's Failure to Protect

Plaintiff also asserts that Defendants failed to protect Plaintiff from assaults on the road squad bus. "To establish a claim for failure to protect, an inmate must show: '(1) serious or significant physical or emotional injury,' and (2) that prison officials exhibited deliberate indifference to inmate health or safety." *Bacchus v. Scarborough*, 466 F. App'x 269, 271 (4th Cir. 2012) (citation omitted). As previously stated, deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Here, Plaintiff's claim also fails. Notwithstanding Plaintiff's own self-serving affidavits, there is no evidence that Defendants encouraged other inmates to attack Plaintiff, nor is there evidence that Defendants witnessed attacks on the bus against Plaintiff. Defendant Brafford only observed Plaintiff in a single altercation whereby he was deemed the aggressor. Because the "summary judgment record establishes that no reasonable jury could find" that Defendants failed to protect Plaintiff from being kicked or assaulted on the road squad bus, this claim too fails. *Smith v. Ozmint*, 578 F.3d 246, 255 (4th Cir. 2009).

## Due Process

Plaintiff also asserts that he was not afforded due process during his disciplinary hearing for the altercation occurring on November 13, 2014. "Prisoners may also claim the protections of the Due Process Clause" as "[t]hey may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Although such rights are retained by prisoners, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply." *Id.* During disciplinary proceedings, inmates have a right to call witnesses. *Ponte v. Real*, 471 U.S. 491, 506 (1985); *see also Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016). However, the inmate's right is qualified such that witnesses should be allowed "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Thus, prison officials are given some discretion in their refusal to allow witnesses, including lack of relevancy. *See Segarra v. McDade*, 706 F.2d 1301, 1305 (4th Cir. 1983) (noting that "correction committees could refuse to hear witnesses because of irrelevance of testimony, lack of necessity and hazards in particular cases."). Additionally, *Wolf* held "that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action. 418 U.S. at 564-65 (citation omitted).

Here, the record is void of any evidence demonstrating that Plaintiff's due process rights were violated. A disciplinary proceeding was conducted and Plaintiff was found guilty of the assault on another inmate. A subsequent reinvestigation was ordered to obtain a witness statement from an inmate whom could not be located. Several witness statements and a request for live witnesses were denied on grounds of relevancy. At the time of the reinvestigation, Plaintiff continued to complain of mental health issues which were not verified by his medical records. Thus, it was not considered as part of the investigation. There is a written record of the evidence relied upon which Plaintiff himself attached a portion to his original Complaint. (*See* Compl. Ex. D-26, ECF No. 2 at 25; Ex. I-39, ECF No. 2 at 38; *see also* Hearing Record, Bond Aff. Ex. 1, ECF No. 118-6.) In sum, Plaintiff received two investigations, both concluding that he was at fault. "Again and again, the Supreme Court has

14

cautioned that we should be hesitant to substitute our judgments for those of prison administrators." *Brown v. Braxton*, 373 F.3d 501, 509 (4th Cir. 2004). The evidence before the Court does not demonstrate a violation of Plaintiff's due process. Therefore, summary judgment will be granted in favor of Defendants.

## **Qualified Immunity**

Defendants assert they are entitled to qualified immunity. (Defs. Br. at 13-15, ECF No. 118.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See, e.g., Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[6] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from

---

[6] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001) in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Having found that Defendants have not violated Plaintiff's rights, this court finds that Defendants are entitled to qualified immunity. *See Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there."); *Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *5 (4th Cir. 1997) (unpublished table decision) (citation omitted) ("Because the evidence in support of [Plaintiff's] claim for failure to protect cannot constitute the violation of a constitutional right, the defendants are entitled to qualified immunity on that claim.").

**Plaintiff's Motion for Temporary Restraining Order**

Plaintiff also seeks a temporary restraining order and preliminary injunction because he is "presently being denied appropriate medical care." (ECF No. 98 at 1.) Plaintiff filed this motion while housed at Bertie prior to signing the release authorization form which allowed prison officials to obtain his past medical records. Plaintiff is currently housed at Maury and is receiving mental health treatment. It appears this request is moot and therefore will be denied.

**IV. CONCLUSION**

For the reasons stated above, IT IS THEREFORE ORDERED that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 98) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (ECF No. 117) is GRANTED, Plaintiff's Motion for Partial Summary Judgment (ECF No. 89) is

DENIED, and this action is DISMISSED with prejudice.  A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This, the 16th day of March, 2017.

_____/s/ Loretta C. Biggs_____
United States District Judge